UNITED STATES of America,
Appellant,

v.

M. O. J. CORPORATION, Appellee.

No. 17886.

United States Court of Appeals
Fifth Circuit.

Jan. 19, 1960.

Rives, Chief Judge, dissented.

Marvin W. Weinstein, Atty., Dept. of Justice, Charles K. Rice, Asst. Atty. Gen., Tax Division, Lee A. Jackson, Meyer Rothwacks, I. Henry Kutz, Attys., Dept. of Justice, Washington, D. C., William B. Butler, U. S. Atty., Arthur L. Moller, Asst. U. S. Atty., Houston, Tex., for appellant.

Homer L. Bruce, Houston, Tex. (Baker, Botts, Andrews & Shepherd, Houston, Tex., of counsel), for appellee.

Before RIVES, Chief Judge, and HUTCHESON and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

The United States appeals from a judgment of the District Court, sitting without a jury, granting a tax refund to the taxpayer corporation. The facts being largely stipulated, and not otherwise being in dispute, the only question presented here is whether the trial court erred in holding that the liquidation by the taxpayer of its four wholly owned subsidiaries was not a Section 112(b) (6) liquidation[1] resulting in no gain to it upon receipt of the property of its liquidated subsidiaries, but was merely a step in the unitary plan to acquire the underlying assets of its subsidiaries and was thus to be accorded the effect of what is now known to the initiated as the Kimbell-Diamond doctrine. Kimbell-Diamond Milling Co. v. Commissioner, 14 T.C. 74, affirmed 5 Cir., 187 F.2d 718. The significance of this holding by the District Court in this case is that, if it was not a Section 112(b) (6) liquidation, then the provisions of Section 113(a) (15)[2] that the basis of the property acquired from the dissolved corporations shall remain the basis in the hands of the parent corporation do not apply; thus, the basis would be the amount paid by the taxpayer for the stock in the original corporations which owned the assets before dissolution.

The taxpayer was organized largely upon the instigation of former employees of four corporations owned and controlled by the Johnston family. The stipula-

---

1. 26 U.S.C.A. (I.R.C.1939) § 112(b) (6), in material part follows:

"§ 112. Recognition of gain or loss.

\*　　\*　　\*　　\*　　\*

"(b) Exchanges solely in kind—

\*　　\*　　\*　　\*　　\*

"(6) Property received by corporation on complete liquidation of another. —No gain or loss shall be recognized upon the receipt by a corporation of property distributed in complete liquidation of another corporation. For the purposes of this paragraph a distribution shall be considered to be in complete liquidation only if—

"(A) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 per centum of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 per centum of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), and was at no time on or after the date of the adoption of the plan of liquidation and until the receipt of the property the owner of a greater percentage of any class of stock than the percentage of such class owned at the time of the receipt of the property; and

\*　　\*　　\*　　\*　　\*

"(C) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock, shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; or \* \* \*"
26 U.S.C.1952 ed. § 112.

2. 26 U.S.C.A. (I.R.C., 1939) § 113(a) (15), provides in material part as follows:

"§ 113. Adjusted basis for determining gain or loss.

"(a) Basis (unadjusted) of property.— The basis of property shall be cost of such property; except that—

\*　　\*　　\*　　\*　　\*

"(15) Property received by a corporation on complete liquidation of another. —If the property was received by a corporation upon a distribution in complete liquidation of another corporation within the meaning of section 112(b) (6), then the basis shall be the same as it would be in the hands of the transferor. The basis of property with respect to which election has been made in pursuance of the last sentence of section 113(a) (15) of the Revenue Act of 1936, as amended, shall, in the hands of the corporation making such election, be the basis prescribed in the Revenue Act of 1934, as amended. \* \* \*"

tion between the parties in this suit, introduced on the trial, stated:

"Plaintiff was incorporated under the laws of Delaware on September 25, 1951, with an authorized capital stock of 672,000 shares of common stock of a par value of $1 each. Plaintiff was formed for the purpose of acquiring control of and continuing the operation of the business enterprise owned and operated by the corporations listed in paragraph 1 [the four existing 'Johnston' companies.]."

The testimony of witnesses for the taxpayer was unimpeached and must be taken for true to the effect that the only way any other than the existing four companies could get ownership and control of the property and businesses belonging to these companies was by purchasing the stock of the companies and thereafter dissolving them.[3] It is also undisputed that the plan devised was that a new corporation, the taxpayer here, would be organized with sufficient capital to permit it to buy up the outstanding stock of the four companies; as the sole stockholder it would then dissolve them and thus acquire ownership of all their assets, and thus be in a position to continue the businesses theretofore carried on by them.

Sufficient stock was sold to the public to provide, when added to the amount paid in by the aforementioned promotors of the project, the four million dollars agreed to be paid for the entire outstanding capital stock of the existing companies; M. O. J. Corporation then held its organizational meeting, voted its stock in the other corporations to cause their dissolution and then transferred all of their assets to it; thereafter M. O. J. Corporation continued to operate the far-flung businesses previously carried on by the Johnston companies.

The taxpayer asserted the right to assign a basis of four million dollars to the assets thus acquired. The Commissioner contended that this was a taxfree liquidation under Section 112(b) (6) of the Internal Revenue Code of 1939, and that the basis in the hands of the taxpayer remained as it had been in the hands of the transferors. The district court held against the Commissioner, deciding that this was not a liquidation as contemplated by Section 112(b) (6), but was, instead, a purchase by M. O. J. Corporation of all of the assets, including the going concern value and good will of the four original operating companies. The court found that under the principle which we approved in Kimbell-Diamond Milling Co., supra, the fact that the purchase was accomplished by means of buying all the stock in, and then dissolving, the original corporate owners was an irrelevant fact in determining the rights of the parties.

We agree, and affirm the judgment of the trial court. The case is not without real difficulties. Not the least of these is that in this field of taxation in which the incidence of taxation is always fixed by statute and by statute alone, we begin with a law which says that when a corporation circumstanced as was M. O. J., receives property "distributed in complete liquidation of another corporation" the basis of such property "shall be the same as it would be in the hands of the transferor."

Our problem is simplified, however, because all the courts that have had occasion to deal with the matter, and the Commissioner as well as taxpayers and their counsel, agree that not every receipt by a corporation of property resulting from its dissolution of a subsidiary constitutes a receipt of such property "distributed in complete liquidation of" the other corporation. We, therefore, consider the circumstances which the

---

**3.** This is readily understandable, because if such assets were sold after having appreciated in the hands of the original owner, the corporate owner would thus be subject to a corporation income tax on the gain and the stockholders would thereafter be subject to a tax on liquidating the corporation if there was a gain over their basis in the stock.

courts have heretofore considered as not being within the legislative scheme contained in Section 112(b) (6).

The first case decided by an appellate court which thus held was Commissioner of Internal Revenue v. Ashland Oil & Refining Co., 6 Cir., 99 F.2d 588, but for some reason the principle there enunciated has taken the name of a later case decided by the Tax Court and affirmed by us, Kimbell-Diamond Milling Co. v. Commissioner, supra. The principle has been most recently articulated by this Court in Georgia Pacific Corporation v. United States:

"This succinctly stated is that when stock in a corporation is purchased for the purpose and with the intent of acquiring its underlying assets and that purpose continues until the assets are taken over, no independent significance taxwise attaches to the several steps of a multiple step transaction. The final step is, therefore, viewed not as independent of the stock purchase but simply as one of the steps in a unitary transaction, the purchase of assets." Georgia Pacific Corporation v. United States, 5 Cir., 264 F. 2d 161, 163.

In Kanawha Gas & Utilities Co. v. C. I. R., 5 Cir., 214 F.2d 685, a case most like the Ashland case, we said:

" * * * The Tax Court referred to Section 141 of the Revenue Act of 1928. Articles 37 and 38 of Regulations 75 applicable to the taxable year 1929 and subsequent years, and Internal Revenue Code Section 113(a) (11), and held that the petitioner is so limited. Concededly, that would be the correct result if petitioner acquired the stocks of the eight corporate vendors intending to assume and, for so long as conditions warranted, to maintain the relation of parent to subsidiaries. Actually, however, petitioner acquired those stocks solely as a means of acquiring their physical properties, intending throughout to cause the corporate vendors to distribute their assets in liquidation to petitioner as soon as it acquired legal title to the stocks; and petitioner promptly executed that plan in accordance with its terms. * * *" 214 F.2d 685, 689–691.

The most recent case we have found dealing with the matter is United States v. Mattison, 9 Cir., 273 F.2d 13. There, although not a Section 112(b) (6) case but rather a case arising under Section 115(c), 26 U.S.C.A., I.R.C.1939, the Court of Appeals for the Ninth Circuit applied the same principle in a case in which the following were the facts: Taxpayer had a contract with Continental Oil Company to buy from him all the operating assets and inventory of Westcott Oil Company. Mattison bought the Westcott stock, liquidated Westcott and transferred to Continental the assets it had agreed to buy and, during liquidation, turned the remainder of Westcott's assets into cash which was finally turned over to Mattison in final liquidation. The Court, finding that Mattison acquired the stock in Westcott and dissolved Westcott for the purpose of carrying out his agreement to sell its operating properties and inventory to Continental, applied the Kimbell-Diamond rule and held that this was not a true liquidation under Section 115(c) but a purchase of property by Mattison.

The next difficulty we consider is posed by the contention of the government that in each of the cases in which the courts have thus far applied the doctrine, the acquiring corporation or individual, as in Mattison, had as the sole purpose for acquiring the stock and dissolving the owner corporation the desire to acquire a certain property or species of assets, generally to integrate them into the continuing business of the purchaser. It is true that in each of the cases mentioned such was the stated purpose: in Ashland, to acquire oil producing properties; in Kimbell-Diamond, to obtain a flour mill to replace one lost through fire; in Kanawha Gas & Utilities Co., to acquire oil and gas leases and equipment; in Georgia Pacific Corporation, to purchase

a large stand of timber; and in Mattison to acquire certain operating assets and inventory.

We recognize that in none of these cases was there a purpose to do what was here the clear intention of the parties, which was to acquire control of and continue the operation of the business enterprise owned and operated by the existing corporations. Here the business was being conducted in twenty-four different states and some foreign countries. Taxpayers' witnesses testified that "the intention was to have the business continue to operate with as little impact from change of ownership as possible" and that it was their desire to continue to trade on the good will which had been created by the old companies in their long history. Instead of acquiring an asset to be utilized in the business of a parent corporation, this taxpayer was created for the purpose of stepping as unobtrusively and effectively as possible, and with all the old organizations intact, into the shoes of the existing going businesses.

These circumstances, says the Commissioner, take this case out of the class of cases that have developed the Kimbell-Diamond Doctrine. We recognize that no case in which the ultimate purpose was to continue the existing businesses under a new corporate structure has applied the doctrine, but we know of no appellate court case in which the issue has been raised. The Commissioner cites, as persuasive authority for the proposition that we should not here apply the Kimbell-Diamond principle, the two cases of John Simmons Co. v. Commissioner of Internal Revenue, 25 T.C. 635, and Trianon Hotel Co. v. Commissioner of Internal Revenue, 30 T.C. 156. We recognize that the distinction which the Tax Court points out there is present here, but with deference to the careful analysis and treatment by that court of the problem at hand, we think the real basis of the Kimbell-Diamond rule lies elsewhere.

■ If, in fact, the stock in a corporation must be bought in order to obtain that corporation's assets, there is no more justification for treating the acquisition of the stock and dissolution of the corporation as two steps giving rise to tax incidence where it is desired to continue the business of the original corporation than where the acquisition of the stock and dissolution are for the purpose of obtaining the property or assets for their own separate intrinsic value. The essential thing is that here is a corporation that wishes to acquire the assets of another corporation; it does not want the intervening corporate structure; it never intends to keep it in existence for any of the many reasons that one corporation may desire to operate a wholly owned subsidiary as a separate entity; it therefore never intends for it to be a real subsidiary and it never is, in fact, except just long enough to be dissolved. Assuming the correctness of the decision of all of the courts that when this situation exists as a part of a plan to buy specific property the purchase of the stock and liquidation of the corporation owning the property is disregarded we perceive no difference conceptually when it exists as a part of a plan to buy a going business.

■ In short, we conclude that the justification for so construing the language of Section 112(b) (6) as to exclude the purchase of specific property through the purchase of stock in its corporate owner is that what results in the "receipt by a corporation of property" is not a "distribution in complete liquidation of another corporation," but is in real substance the purchase of the property, which is accomplished, for reasons beyond the control of the purchaser, by the purchase of stock and dissolution of the corporate owner. This is just as true if "the property" is the going business of the transferor as if it is a flour mill or oil well or other specific property of the transferor.

We conclude that the principles that required the courts to announce the Kimbell-Diamond doctrine apply with full vigor to the admitted facts of this case.

The judgment is, therefore, affirmed.

RIVES, Chief Judge (dissenting).

The over-all plan was to acquire control of and continue the operation of the business enterprises owned and operated by the four closely connected corporations, and to capitalize upon their good will. Those corporations were to be liquidated, but the business enterprises were to remain the same under a new corporate form. That seems to me the type of situation which, both in substance and in form, calls for the application of Section 112(b) (6) rather than of the Kimbell-Diamond doctrine.

I therefore respectfully dissent.