The **ACRO MANUFACTURING COM-PANY**, Petitioner,

v.

**COMMISSIONER OF INTERNAL REV-ENUE**, Respondent.

No. 15380.

United States Court of Appeals
Sixth Circuit.

July 8, 1964.

Certiorari Denied Oct. 26, 1964.
See 85 S.Ct. 158.

Richard J. Heiman, Department of Justice, Washington, D. C., Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Melva M. Graney, Department of Justice, Washington, D. C., on brief, for respondent.

Before MILLER, Circuit Judge, and WEINMAN and KAESS, District Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

The taxpayer, The Acro Manufacturing Company, sought a redetermination in the Tax Court of its income tax liability for the years 1953 and 1955. The issue involved is whether a loss in the amount of $557,860.00, sustained by the taxpayer in 1955, was an ordinary loss or a capital loss. If it was an ordinary loss, the taxpayer had a net operating loss for the year 1955, which can be carried back to 1953. If the loss was a capital loss, the taxpayer owed additional taxes for the year 1955 in the amount of $239,026.78.

The facts are stipulated and are set out in detail in the findings and opinion of the Tax Court reported at 39 T.C. 377. The following summary is sufficient for our present purposes. During the years in question the principal business of the taxpayer was the manufacture and sale of precision switches and thermostatic controls. On December 9, 1954, it acquired all the outstanding stock of Universal Button Company (hereinafter referred to as Button) solely in exchange for 55,000 shares of its own voting common stock. Button was engaged in the business of manufacturing metal buttons for work clothes.

In March 1955 the taxpayer was approached by Talon, Inc., (hereinafter referred to as Talon) for the purpose of purchasing the outstanding capital stock of Button. The taxpayer was receptive to this idea because of certain unforeseen difficulties that had arisen in connection with the operation of Button, but was unwilling to sell the Button stock to Talon because of what it considered undesirable income tax results. The taxpayer

John W. Riely and H. Brice Graves, Richmond, Va., Waller H. Horsley, Richmond, Va., Joseph A. Howell, Jr., Richmond, Va., on brief; Hunton, Williams, Gay, Powell & Gibson, Richmond, Va., of counsel, for petitioner.

and Talon finally agreed that the taxpayer would cause Button to be completely liquidated and to distribute its assets, property and good will to the taxpayer in such complete and final liquidation, and that the taxpayer, upon acquiring such assets, would sell them to Talon subject to the liabilities of Button, for an agreed price. In accordance with this plan, Button was completely liquidated on June 30, 1955, and the taxpayer, upon receipt of the operating assets, immediately transferred them to Talon, in accordance with the terms of their agreement.

The business of Button was actively operated by Button until the time of its liquidation on June 30, 1955, and was continued by Talon beginning on June 30, 1955, after it acquired the business. There was no interruption in the everyday operations of the Button business due to the various transfers described herein, which took place on June 30, 1955.

The assets of Button received by the taxpayer and sold to Talon were inventories, accounts receivable, and real and depreciable property with respect to the business carried on by Button. It is agreed by the parties that they were not capital assets in the hands of that corporation, and if sold at a loss by that corporation would not have constituted a capital loss.

In its income tax return for the taxable year 1955 the taxpayer reported this transaction with Talon as an ordinary loss, as it would have been if the sale had been by Button. The Commissioner, in the notice of deficiency, determined that the loss constituted a capital loss rather than an ordinary loss. The Tax Court sustained this determination. It is this issue which is before us on the present petition for review.

The parties are unable to refer us to any other reported case deciding this exact issue. The taxpayer claims, however, that the statutory provisions applicable to assets received by a parent corporation in the complete liquidation of a subsidiary corporation clearly show that it is the intent and purpose of Congress that such assets are to be received and held by the parent corporation in the same taxable status as they were held by the subsidiary corporation before liquidation.

In support of this contention, taxpayer refers to the following sections of the Internal Revenue Code of 1954.

Section 332(a) provides, "No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation."

Section 334(b) (1) provides, "If property is received by a corporation in a distribution in complete liquidation of another corporation * * * the basis of the property in the hands of the distributee shall be the same as it would be in the hands of the transferor."

Section 1223(2) provides, "In determining the period for which the taxpayer has held property however acquired there shall be included the period for which such property was held by any other person, if under this chapter such property has, for the purpose of determining gain or loss from a sale or exchange, the same basis in whole or in part in his hands as it would have in the hands of such other persons."

It is argued that these statutory provisions make it clear that upon the complete liquidation of a subsidiary the parent is to step into the shoes of the subsidiary, and since a sale of the assets by Button would not have been treated as a sale of capital assets, a sale by the taxpayer should be treated the same way.

The Commissioner, of course, recognizes these statutory provisions. However, he points out that although they provide that the parent steps into the shoes of the subsidiary insofar as certain designated tax consequences are involved, they do *not* provide that noncapital assets in the hands of a subsidiary shall remain noncapital assets in the hands of the parent corporation after they have been received in complete liquidation. On the contrary, he points out that whether assets are capital assets or noncapital assets is expressly controlled by Section 1221 of the Internal Revenue

Code, the provisions of which, insofar as they are applicable to our present question, are as follows:

"§ 1221.  *Capital asset defined*

"For purposes of this subtitle, the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

"(1) stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business;

"(2) property, used in his trade or business, of a character which is subject to the allowance for depreciation provided in section 167, or real property used in his trade or business;

\*    \*    \*    \*    \*    \*

"(4) accounts or notes receivable acquired in the ordinary course of trade or business for services rendered or from the sale of property described in paragraph (1);  \*  \*."

■ We are of the opinion that the Commissioner's argument is sound on this phase of the case.  Although it is true that Congress intended that the parent corporation was to step into the shoes of the subsidiary upon a complete liquidation of the subsidiary, insofar as no gain or loss should be recognized in the transaction, that the basis of the property in the hands of the parent corporation should be the same as it was in the hands of the subsidiary corporation, and that the holding period of the subsidiary corporation should be added to the holding period of the parent corporation, this does not justify the conclusion that Congress intended that noncapital-assets held by a subsidiary corporation will continue to be noncapital assets in the hands of the parent corporation when there is an express statutory provision which lays down the standards for deter-

mining whether assets are noncapital assets or capital assets.  In other words, we are necessarily controlled by an express statutory provision, which is in no way repealed by the statutory provisions relied upon by the taxpayer.  Accordingly, the question presented is whether the assets received and sold by the taxpayer were capital assets under Section 1221 of the Internal Revenue Code.  It is clear from the wording of the section that they were capital assets unless they fall within one of the exceptions therein set out, namely, stock in trade or inventory, depreciable property or real estate used in trade or business, or accounts receivable acquired in the ordinary course of trade or business.  We are not concerned whether these assets meet this test in the hands of Button, which the Commissioner concedes to be the case, but the question is whether these assets meet this test in the hands of the taxpayer after the taxpayer acquired them from Button and at the time it made the sale to Talon.  We do not believe it can be said that tangible assets received from Button can be considered stock in trade, inventory, or property used in the business of the taxpayer.  The business of the taxpayer was the manufacture and sale of precision switches and thermostatic controls.  Nor do we believe that the accounts receivable received from Button were acquired in the ordinary course of trade or business for services rendered or from the sale of property as that term is generally understood.

■ The taxpayer attempts to meet this situation by claiming that it in fact owned, operated and used in its business the assets received from Button for a short period of time on June 30, 1955, between the time when those assets were distributed to it upon the liquidation of Button and the time when the assets were transferred to Talon.  We agree with the ruling of the Tax Court that the ownership of these assets for such a minimal, transitory period of only a few hours at the most was insufficient to establish use of the assets in the taxpayer's business or to place the taxpayer in the

**44**

button business within the meaning of the statutory provision. It was clearly not the intent of the parties that the taxpayer was to engage in the button business, and we are not advised of any showing by the taxpayer's corporate records that it manufactured in whole or in part or sold any buttons on June 30, 1955, including, among other things, cost of manufacture and payment of wages to Button's employees.

 The taxpayer further argues that by reason of its ownership of the stock of Button, it was in the business of manufacturing buttons. It calls attention to the fact that the Standard Oil Company of New Jersey, which is a holding company with no operating assets, is nevertheless in the oil business, and that the American Telephone and Telegraph Company, which is a holding company with no operating assets, is nevertheless in the telephone business. That, of course, is the way in which the public generally regards these two companies, but that in no way negatives the fact that they are holding companies and not operating companies, and that their corporate entities as holding companies are separate and distinct from the corporate entities of the subsidiaries which they own. For the purposes of the statute which we are here considering, we do not consider the taxpayer to have been in the button business by reason of the fact that it owned the stock of a subsidiary corporation which was engaged in that business.

In effect we are urged by the taxpayer to treat its sale transaction as though it were made by its subsidiary. But it was not a sale by the subsidiary, even though the assets were acquired from the subsidiary by the taxpayer by reason of its stock ownership of the subsidiary. Unless we ignore the separate corporate entities of the taxpayer and the subsidiary, which, in our opinion, we are not authorized to do, the sale must be treated for income tax purposes as a sale by the taxpayer. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499; National Carbide Corp. v. Commissioner, 336 U.S. 422, 69 S.Ct. 726, 93 L.Ed. 779.

Our views in this matter are very much in accord with those expressed by the Tax Court. Without enlarging upon this opinion, we refer to the distinction made by that Court between the present case and the authorities relied upon by the taxpayer.

The decision of the Tax Court is affirmed.