JAMES G. BAILEY, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Bailey v. Commissioner
Docket Nos. 8255-74, 8256-74, 8257-74.
United States Tax Court
T.C. Memo 1976-392; 1976 Tax Ct. Memo LEXIS 12; 35 T.C.M. (CCH) 1768; T.C.M. (RIA) 760392; December 22, 1976, Filed Curtis Darling and David B. Day, for the petitioners. Hector C. Perez, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: In these consolidated cases, respondent determined the following deficiencies in petitioners' *13 Federal income taxes for the year 1971: Docket No.
Petitioner
Deficiency
8255-74
James G. Bailey
$1,835
8256-74
Lillian Arlene Bailey
1,436
8257-74
Melvin Douglas Bailey
2,133
The sole question we must decide is whether certain real property was being used in petitioners' trade or business at the time of its sale in 1971. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by reference. At the time the petitions herein were filed, petitioner James G. Bailey (James) resided in Bakersfield, California, petitioner Lillian Arlene Bailey resided in Fresno, California, and petitioner Melvin Douglas Bailey resided in or around San Francisco, California. Each petitioner filed an individual Federal income tax return for the year 1971 with the Internal Revenue Service Center at Fresno, California. Petitioners are brothers and sister. Prior to 1967, each petitioner had been a shareholder in Rancho Bakersfield, Inc. (hereinafter Rancho), which was engaged in the business of owning and operating a motel-restaurant and cocktail lounge on Freeway 99 *14 in Bakersfield, California. In September 1966, the board of directors resolved to sell the business and liquidate Rancho. The liquidation was carried out and in September 1967 petitioners received as distributions in redemption of their shares three pieces of property: the Galtes property, the Croft property (of which they already owned the remaining 14/15th's interest), and another small parcel of real property. In the late 1950's or early 1960's, state, local, and Federal authorities decided to relocate Freeway 99 to bypass the business districts of many towns and cities, including Bakersfield. Rancho recognized that motels situated near the new route of Freeway 99 could be very profitable. In furtherance of this evaluation, Rancho acquired sites with frontage on what it was hoped would be the final route. One of the parcels so acquired was the Galtes property involved herein. The Bakersfield bypass of Freeway 99 was completed in 1965. Although the Galtes property fronted on the highway, it was not suitable as a site for a motel because it was not readily accessible from the Freeway. Rancho made no operational use of the Galtes property prior to its liquidation. The parties *15 have stipulated that the Galtes property constituted real property used in the trade or business of Rancho. Subsequent to the liquidation, James applied to the Howard Johnson Corporation, the Travelodge Corporation, and the Rodeway Corporation for one of their motel franchises. In each of the formal franchise applications, the Croft property was specified as the prospective site for the motel. James suggested the Galtes property as a possible site for a motel, but none of the franchise operators expressed by interest in using that property. During the period in which James was seeking a motel franchise, a restaurant was being built on land adjacent to the Croft property. This restaurant was owned by a partnership consisting of the petitioners and their mother. The restaurant commenced operation in 1970. Petitioners never developed the Galtes property prior to its sale in 1971 because (1) the property lacked direct access to Freeway 99; (2) the land was below grade and it would have been necessary to fill it to grade before any development could take place at a cost estimated at $125,000 in 1969, when petitioners became aware of this problem; and (3) petitioners had encountered *16 considerable difficulty in financing any development operation. Shortly after the liquidation of Rancho, petitioners listed for sale the Galtes property and the small parcel received from Rancho, but not the Croft property, in order to raise sufficient cash to pay the income tax on the gain realized as a result of the liquidation. The listing was for six months. The Galtes property was again listed for sale in 1968, 1970, and 1971. It was sold at a loss on December 22, 1971. OPINION The issue before us is whether the loss from the sale of the Galtes property was a capital loss under section 1221, [2] as contended by respondent, or whether, as contended by petitioners, such property was "real property used in [their] trade or business," with the result that it is excluded from the definition of a capital asset under section 1221(2) and petitioners' loss should be treated as an ordinary loss under sections 1231(a) and 1231(b)(1). [3] For the reasons hereinafter stated, we hold for respondent.
*17 Initially, petitioners argue that, because the Galtes property was stipulated to have been used in the trade or business of Rancho, we must hold, as a matter of law, that it was so used by them. For property to qualify as a section 1231 asset, the taxpayer selling the asset must establish that the asset was used in his trade or business. E. R.Sovereign,32 T.C. 1350 (1959), affd. 281 F. 2d 830 (7th Cir. 1960) (interpreting the comparable provision under the 1939 Code); section 1.1231-1(c), Income Tax Regs.Where a corporation is liquidated and assets are distributed to its shareholders, whether the property is used in the trade or business depends solely upon how the property was used by the shareholder after the liquidation. Acro Manufacturing Co.,334 F. 2d 40 (6th Cir. 1964), affg. 39 T.C. 377 (1962); Seaboard Packing Co. v. United States, an unreported case ( D. Me. 1973, 32 AFTR 2d 73-5009, 73-2 USTC par. 9493). *18 See also Jack H. Powers v. United States, an unreported case ( S.D. Ill. 1958, 1 AFTR 2d 1921, 58-2 USTC par. 9597). How the property was used by the corporation from which it was acquired is immaterial. Acro Manufacturing Co.,supra.
Petitioners next contend that they were engaged in the business of developing motels as well as restaurants and that therefore they satisfy the "used in the trade or business" statutory requirement. The issue is purely factual and petitioners have the burden of proof. Higgins v. Commissioner,312 U.S. 212 (1941); Susan P. Emery,17 T.C. 308 (1951); Rule 142, Tax Court Rules of Practice and Procedure. Assuming arguendo that petitioners were engaged in such a trade or business, they can satisfy their burden only by showing that the Galtes property was used in that business. Nulex, Inc.,30 T.C. 769 (1958). Admittedly, property acquired for use in a trade or business which is never put to its intended use in that business may, under appropriate circumstances, be considered *19 property "used in [a] trade or business." Carter-Colton Coal Co.,9 T.C. 219 (1947). [4] But at the time the Galtes property was acquired in the liquidation of Rancho, it was an unlikely site for a highway-oriented motel because of the lack of easy access to Freeway 99. Petitioners listed the property for sale almost immediately upon its acquisition and they relisted it in 1968, 1970, and 1971. The Galtes property was never used as a site for a motel or restaurant. It was never developed by petitioners for commercial use, nor did they ever appropriate it to any trade or business in which they were engaged. The fact that James suggested the Galtes property to the franchisees as a potential site is not enough to satisfy petitioners' burden of proof in the face of the foregoing, particularly in light of the fact that franchisors rejected the property as a possibility. "At most, they only endeavored to dispose of the lot at the best available price, and investigated the possibilities for improvement of the real estate." Beck v. Commissioner,179 F. 2d 688, 690 (7th Cir. 1950). *20 Nor can petitioners satisfy their burden of proof based upon the fact that at the time of the sale of the Galtes property they were engaged in the restaurant business. The umbrella of this business is not sufficient to cover the use of the Galtes property. Cf. Patrick L. O'Donnell,62 T.C. 781 (1974), affd. per curiam and without opinion 519 F. 2d 1406 (7th Cir. 1975). [5]
In short, petitioners have not persuaded us that they held the Galtes property with the intention of using it in a trade or business in which they were engaged at any time prior to its sale in 1971. All of the cases cited by petitioners involved situations in which the taxpayers were already engaged in a trade or business in which the use of the property was contemplated and are therefore distinguishable.
Decisions will be entered for the respondent. Footnotes
1. Cases of the following petitioners are consolidated herewith: Lillian Arlene Bailey, docket No. 8256-74; Melvin Douglas Bailey, docket No. 8257-74.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable year in question. ↩
3. The parties have stipulated that the Galtes property was not inventory in the hands of petitioners nor held by them for sale to customers in the ordinary course of their trade or business.↩
4. See also Charles M. Spindler,T.C. Memo. 1963-202↩.
5. See also Margaret E. Johnson Malmstedt,T.C. Memo. 1976-46↩.