HOME CONSTRUCTION CORPORA-
TION OF AMERICA, etc., Plaintiff-
Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 29592.

United States Court of Appeals,
Fifth Circuit.

March 11, 1971.

Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Stuart A. Smith, Sid Williams, Jack Warren, William L. Goldman, Attys., Dept. of Justice, Washington, D. C., for defendant-appellant; Charles White-Spunner, U. S. Atty., Irwin W. Coleman, Jr., Asst. U. S. Atty., of counsel.

Robert P. Denniston, J. Jeptha Hill, Charles B. Bailey, Jr., E. Watson Smith, Mobile, Ala., for plaintiff-appellee; Johnstone, Adams, May, Howard & Hill, Mobile, Ala., of counsel.

Before GODBOLD, CLARK and INGRAHAM, Circuit Judges.

CLARK, Circuit Judge:

This tax carry-back dispute was spawned when a shell home construction business, operating in a multi-entity form of 123 separate corporations, was consolidated into a single legal being. Following the consolidation, the newly formed creature, unlike most of its antecedents, experienced financial difficulties. The neophyte at single corporate structure existence sought to obtain a tax refund by carrying these losses back as offsets against earnings of predecessor corporations in consolidation fiscal years. Because we find this reorganiza-

tion constituted a mere change in identity, form and place of organization, we affirm the district court's holding that this was a subparagraph F reorganization; and hold that the taxpayer may be entitled to a refund—an issue which can only be determined after further proceedings on remand.

## SETTING THE STAGE

The factual matrix within which this case arose is not disputed. We therefore make reference to the complete explication contained in the decision of the district court, published at 311 F.Supp. 830 (S.D.Ala.1970). It suffices for the purposes of this opinion to summarize these facts as follows.

After the reorganization of the separate corporations into a singular operating entity, Home Construction Corporation of America, all the business activities which had been carried on by the 123 warehouse, building, and sales corporations before the reorganization, were carried on by the new unified corporation which was the plaintiff below (hereinafter taxpayer). The former corporate businesses were continued in operation as branches. Until after the tax years in which net operating losses occurred, the only changes made in the corporate activities conducted were those dictated by the operations of the business, that is to say, no business activity was conducted solely because of or unique to the corporate reorganization. There were no changes in the scope or the type of overall business operations which were carried on, nor in business location, nor in the location of management headquarters, nor in the overall corporate assets, nor in personnel employed in the operations, nor in methods of operations. The only changes consisted of certain simplifications of bookkeeping procedures and the adoption of a common fiscal year period. The same natural person, Frank Lee, continued to own all the stock and to exercise personal control and direction just as he had before the merger. He continued to be President and Managing Director of the taxpayer, and the same persons who constituted the Boards of Directors and officers of the former corporations constituted the board and officers of this successor corporation.

For federal income tax purposes, taxpayer reported its income on a fiscal year basis ending July 31. For its tax year ending July 31, 1963, the amalgamated corporation sustained and reported net operating losses in the amount of $1,084,483.06, and for its tax year ending July 31, 1964, it sustained and reported net operating losses in the amount of $626,374.62. The taxpayer thereupon filed claims for refunds created by carrying back the 1963 and 1964 net operating losses and setting them off against the taxable income paid by 83 of the 123 former corporations which experienced profitable operations.

The statutory authority which would entitle taxpayer to this carry-back and resultant refund is § 172(b) of the Internal Revenue Code of 1954, which must be applied in accordance with § 381 thereof. The application of § 381, in turn, depends upon whether the merger was a reorganization within the meaning of § 368(a) (1) (F) of the Internal Revenue Code of 1954.

Acting in the belief that a reorganization wherein 123 corporations were simultaneously consolidated into a single corporation could not be "a mere change in identity, form, or place of organization" so as to qualify as an F reorganization, the Internal Revenue Service denied a refund. The government's position was reversed by the district court, which held the consolidation to be an F reorganization and accordingly concluded that the taxpayer was entitled to a refund based upon carrying back the post-consolidation losses as offsets against the consolidated pre-merger profits of the antecedent corporations.

The government's appellate contentions require that we first determine if the consolidation of 123 operating corporations into the single corporate taxpayer was "a mere change in identity, form or place of organization" within the

meaning of Section 368(a) (1) (F). If the changeover does qualify as an (F) reorganization, we must then grapple with the technical problem of the extent to which, under Section 381(b), the new corporation may carry the net operating losses back to prior years of its constituent corporations.

## A MERE CHANGE IN FORM

Realizing that there were numerous means by which a corporation might restructure itself, Congress established certain specialized rules designed to give specific tax treatment to those categories of corporate reorganizations mentioned in § 368. That statute defines six types of corporate reorganizations which qualify as tax free reorganizations. Congress also made a distinction between various § 368 reorganizations. This distinction, which is our specific concern here, was established by § 381, which permits a loss carry-back in accordance with § 172(b) only for those corporation transactions which qualify as § 368(a) (1) (F) reorganizations. The pertinent language of § 381(b) provides:

> Operating rules.—Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of Section 368(a) (1)—
>
> \*　\*　\*　\*　\*　\*
>
> (3) The corporation acquiring property in a distribution or transfer described in subsection (a) shall not be entitled to carry back a net operating loss for a taxable year ending after the date of distribution or transfer to a taxable year of the distributor or transferor corporation.

Our threshold task is to determine if the reorganization in the instant case qualifies as an F reorganization.

Although text writers [1] and even past judicial decisions [2] have spoken of an almost complete absence of judicial, legislative, or administrative attention to § 368(a) (1) (F), the government bases its contentions primarily upon legislative evidence. These legislative history arguments leave us unconvinced, since from them we are able to discern only certain broad generalizations. For example, it is more than apparent that § 368 was enacted to free from tax consequences those corporate reorganizations which involved only changes in corporate structure—be they by merger or by some less involved means of varying the identity, form, or place of incorporation of the artificial being. It is equally clear that the underlying purpose and the quality which characterizes all § 368 reorganizations is asset continuity, meaning that the assets of the new entity subsist and are utilized in a manner which is substantially a continuation of the existence and use made of such assets by the former entity or entities. These generalizations, however, are no more helpful in defining what constitutes an F reorganization than the truism that the arrangement of the various subparagraphs of § 368 suggests a descending order of significance, with subparagraph (F) being the least consequential of any of the reorganizations described. Since a single reorganization may fall within more than one of the § 368 categories, and since a restructuring which qualifies as an (F) reorganization is still entitled to any benefits which accrue to that classification, even though it may also fit into another § 368 category,[3] none of these axioms is dispositive.

1. Bittker and Eustice, Federal Income Taxation of Corporations and Shareholders, p. 547 § 12.17.

2. Pridemark, Inc. v. C.I.R., 345 F.2d 35, 42 (4th Cir. 1965) declared, "The section, though aged, has received almost no administrative or judicial attention until recently."

3. See generally, Footnote 7, Estate of Stauffer v. C.I.R., 403 F.2d 611, 617 (9th Cir. 1968).

Nor is our task of defining the ambit of an F reorganization aided by the legislative evidence surrounding the enactment of § 381. An express purpose of § 381 was to base carry-back and carry-over provisions "upon economic realities rather than upon such artificialities as legal form of reorganization."[4] Although § 381 was intended to permit certain reorganized corporations to inherit some of the tax attributes of their predecessors, subsection (b) generally precludes the carry-back of net operating losses incurred in a taxable year ending after the date of the distribution or transfer to a prior taxable year of the distributor or transferor corporation. The one mentioned exception is an F reorganization. Again however, restating the obvious casts no light on the issue of whether there was sufficient identity between the pre- and post-reorganization enterprises of this taxpayer to qualify its changeover as an F reorganization.

For all we have been able to discover, the specific proviso which controls the case at bar just never received direct public congressional explication. Since the legislative history is not helpful, we look to determine whether the enactment has a meaning plain enough to clearly indicate the proper decision of this appeal. In Re Indian Lake Estates, Inc., 428 F.2d 319, 323 (5th Cir. 1970).

This course confronts us with the decision of this circuit in Davant v. Commissioner of Internal Revenue, 366 F.2d 874 (5th Cir. 1966), cert. denied, 386 U. S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460 (1967). The government, realizing that a decision favorable to its position can be rendered in the instant case only if the principle of *Davant* is impaired by this panel, urges such a course of action. This we decline to do.[5] Even if we were of a mind that *Davant* was incorrectly decided, an issue which we will not assay, its stricture would be no less than binding on this panel. Therefore, a comparative analysis with that case is appropriate.

In *Davant*, a single group of stockholders owned all of the capital stock of two corporations (which we will distinguish as Water and Warehouse). It was their desire to consolidate the operation of these two entities into a single corporation, Water, and, at the same time, to withdraw a portion of the corporate assets of Warehouse as capital gains. To effectuate this reorganization and the withdrawal of the appreciated corporate assets of Warehouse, the stockholders sold their Warehouse stock to a third party, who then sold the stock to Water, which thereafter liquidated Warehouse. The stockholders went through this fiction so that the transaction could be characterized as a sale, and thus they would have to pay taxes only on capital gains (the difference between the sale price of the stock and the shareholder's basis in the stock of Warehouse). In *Davant* it was the Commissioner who insisted that the reorganization should qualify as an F reorganization, because then the 900,000 dollars distributed to the stockholders would not be capital gains realized on a sale, but rather profits of Warehouse and Water, and hence the amount would be reportable as a dividend and taxable as ordinary income.

---

4. S.Rep.No.1622, 83rd Cong. 2nd Sess., 3 U.S.Code Cong. & Admin.News 1954, p. 4683.

5. On the issue of panel precedent, our course is clearly charted by the following circuit rule:

   This Court, unlike some of our sister Circuit Courts who occasionally follow a different course, has long tried earnestly to follow the practice in which a decision announced by one panel of the Court is followed by all others until such time as it is reversed, either outright or by intervening decisions of the Supreme Court, or by the Court itself en banc. Atlantis Development Corp. v. United States, 379 F.2d 818, 828 (5th Cir. 1967).

After first noting a substantial shift in the proprietary interest in a corporation would not qualify as a mere change in identity or form, we accepted the position of the Commissioner and held the *Davant* reorganization to be an F type on the basis of this reasoning:

> The term "mere change in identity [or] form" obviously refers to a situation where it represents a mere change in *form* as opposed to a change in substance. Whatever the outer limits of Section 368(a) (1) (F), it can clearly be applied where the corporate enterprise continues uninterrupted, except for a distribution of some liquid assets or cash. Under such circumstances, there is a change of corporate vehicles but not a change in substance. If Water had no assets of its own prior to the transfer of Warehouse's operating assets to it, could we say that Water was any more than the alter ego of Warehouse? The answer is no. The fact that Water already had other assets that were vertically integrated with Warehouse's assets does not change the fact that Water was Warehouse's alter ego. Viewed in this way, it can make no practical difference whether the operating assets were held by Water or Warehouse, and a shift between them is a mere change in identity or form. At least where there is a complete identity of shareholders and their proprietary interests, as here, we hold that the type of transaction involved is a type (F) reorganization.

■ It is true that *Davant* was concerned with a liquidation-reorganization problem while in the instant case we are dealing exclusively with a reorganization, but this is a distinction without legal significance. Whether an F reorganization exists depends neither upon the purposes nor the mechanics of the reorganization, but rather upon whether a change of substance occurred between the before and after enterprise.

The government suggests that a change which alters the number of tax entities can never produce a subchapter F reorganization, because this would vary the tax effect and any reorganization which results in any changed tax consequences cannot be a mere change in form; hence, the alteration of tax results alone would characterize the change as one of substance. We reject this reasoning. Certainly if there is a logos in the law, it is embodied in the rule that substance controls over form in determining tax consequences. But to reason that tax effects can, in and of themselves, breathe the life of substance into a carcass that otherwise is a mere change of form, is faulty reasoning. Tax results cannot form even a partial measure of determining what substance is present in a transaction. Our adoption of the government's position would literally let the tail wag the dog.

■ In summary, we hold that *Davant* establishes criteria which adequately define when a reorganization qualifies as a mere change in form, identity, or place of incorporation. These include identity of shareholders and their proprietary interests, unimpaired continuity of the essential business enterprise and a new form which is the alter ego of the old. While the instant reorganization was more complex, it still meets all the criteria established by *Davant*. It therefore was an F reorganization.

This Circuit is not alone in the position we adopted in *Davant*. The instant case bears much similarity to Estate of Stauffer v. Commissioner of Internal Revenue, 403 F.2d 611 (9th Cir. 1968).[6] In that case the sole owner of three sep-

---

6. We also note that the *Davant-Stauffer* view of what constitutes an F reorganization had been foreshadowed by the clear implications of the Fourth Circuit's deci-

sion in Pridemark, Inc., 42 T.C. 510 (1964), rev'd, 343 F.2d 35 (4th Cir. 1965).

arate corporations which carried on the identical business of promoting mechanical weight and posture control devices in three different states, established a fourth corporation as a shell in yet another state and the three former corporations were consolidated into the newly formed fourth corporation. After the merger, things remained pretty much as before. The paid-in surplus and retained earnings of the new corporation were the same as those of the prior three. The places of doing business, the liabilities, the obligations, and the management continued unchanged. After the reorganization the new corporation suffered net operating losses and attempted to carry these losses back and deduct them from the income of one of the prior corporations on the authority of §§ 172, 381(b) and 368(a) (1) (F).

In *Stauffer*, the Commissioner not only argued that the case was distinguishable from *Davant*, but also urged that important legislative evidence had not been presented to the *Davant* court. The Ninth Circuit rejected these arguments and concluded:

> The principle we derive from *Davant* is that a shift in operating assets from the transferor corporation to its alter ego wherein the identity of the proprietary interest remains intact and the business enterprise of the transferor corporation continues unimpaired results in an "F" reorganization.

The district court derived the same principle and we now affirm that it is precisely the principle for which *Davant* stands.

*Stauffer*, besides pointing to the above broad principle, also points to certain specifics which have identical counterparts in the instant case. There, the only change that took place was that Stauffer New Mexico [the transferee corporation] reported the combined income of the three pre-merger corporations in one tax return; the individual books of the constituent enterprises were kept as they had been before the merger; the enterprises continued to operate in the same manner and in the same location as before the merger; the change was one of corporate vehicles only. The Regulations, Section 1.-381(b)–1(a) (2) state that in an "F" reorganization the acquiring corporation is to be treated "just as the transferor corporation would have been treated if there had been no reorganization." Thus, the identity of pre- and post-merger entities is so complete that for tax purposes the latter is the former. That Stauffer New Mexico stood in the shoes of each of the three constituent corporations cannot be here denied; it was the alter *ego* of each of the three pre-merger entities.

The new corporate vehicle was merely an alter ego of the former 123 corporations. Thus, both *Davant* and *Stauffer* accurately augured affirmance here.

## LIMITATIONS

The Commissioner asserts that if we uphold the district judge's broad reading of § 368(a) (1) (F), it will wreak havoc with the Congressional scheme for classifying reorganizations by obliterating the detailed distinctions among the various types of reorganizations enumerated in § 368. The Commissioner argues that *Stauffer* and *Davant* really only establish two basic criteria: (1) the identity of proprietary interests in the transferor and transferee, and (2) the uninterrupted continuity of business. It is asserted that since these two criteria are present with other § 368 reorganizations, our holding is tantamount to equating an F reorganization with those other types. This is simply not true. The reader should note the full delineation of limiting factors which must concur in multi-corporate F reorganizations. For example, both *Davant* and *Stauffer* are limited to the merger of commonly owned corporations engaged in the same or integrated activities. This factor is present here. There is no substantive difference between taxpay-

er's pre-merger operation consisting of 123 closely held affiliated corporations and its post-merger operation consisting of conduct of the same business with the same assets and ownership through numerous divisions of a single corporation. This situation meets the ultimate benchmark by which to gauge an F. reorganization—continuity in all matters of business substance.

Another limitation which is commonly required by tax jurisprudence and which should not go unheeded as a requirement here, is that there must be a legitimate business purpose independent of and in addition to the tax consequences of the merger. Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935). The district court determined on credible evidence, that the motivating factor for taxpayer's reorganization was to secure long-term financing. Thus, this limitation was also met.

## CALCULATION OF CARRY-BACKS

█ Our decision that this was an F reorganization requires that we deal with the method of determining what carry-back rights obtain. The touchstone for correct calculation of loss carry-backs is that an after-merger taxpayer may not obtain any more favorable tax treatment than it would have received had the loss occurred under the business's pre-merger form.

This is clearly the teaching as to carry-overs in Libson Shops, Inc. v. Koehler, 353 U.S. 382, 77 S.Ct. 990, 1 L.Ed.2d 924 (1957), which involved the merger of 16 commonly owned and operated corporations, all of which were engaged in the retail sale of women's apparel. These 16 merged into a single corporation, owned in the same proportions by the same stockholders and engaged in the same business as the previous businesses. After the merger the new, profitable corporation attempted to carry over pre-merger losses of three of the prior corporations to the new operating entity. The United States Supreme Court rejected Libson Shops' attempt to average post-merger profits in language which we regard as appropriate to the case at bar.

In the present case, the 16 sales corporations, prior to the merger, chose to file separate income tax returns rather than to pool their income and losses by filing a consolidated return. Petitioner is attempting to carry over the pre-merger losses of three business units which continued to have losses after the merger. Had there been no merger, these businesses would have had no opportunity to carry over their losses. If petitioner is permitted to take a carry-over, the 16 sales businesses have acquired by merger an opportunity that they elected to forego when they chose not to file a consolidated return.

\*    \*    \*    \*    \*    \*

The availability of this privilege depends on the proper interpretation to be given to the carry-over provisions. We find nothing in those provisions which suggest that they should be construed to give a "windfall" to a taxpayer who happens to have merged with other corporations. The purpose of these provisions is not to give a merged taxpayer a tax advantage over others who have not merged. We conclude that petitioner is not entitled to a carry-over since the income against which the offset is claimed was not produced by substantially the same businesses which incurred the losses.

█ Applying the *Libson Shops'* rationale to the case at bar, the taxpayer may offset net operating loss carry-backs only if it can establish that the losses of the new corporation can be reunitized for the sake of tax accountability into the same taxable units which existed before the reorganization. Thus, only such portion of the overall loss as can be shown to be attributable to each respective separate division within the new structure may be carried back, and then only be offset against gains of such division's pre-merger counterpart. This

was the position adopted by the Ninth Circuit in *Stauffer*.

Had the operational facilities of the three pre-merger corporations been dismantled and transported to New Mexico we would have a different situation. Then, the financial status of Stauffer New Mexico would have reflected a single operation. In such case, there would be no means by which a loss could be pro-rated among the pre-merger identities, and the combined losses of what was in fact the consolidation of three companies could not have been set off against the pre-merger income of only one of those companies, for this would have resulted in a windfall to the transferee. The losses of the Illinois and New York corporations could not have been carried back to, or offset by, prior taxable years of the California corporation before the merger, and to permit their combined losses to be so offset after the merger, would accord to the transferee a benefit which would not have been available prior to the merger. However, we emphasize that this is but a problem of tax accountability and does not reflect on our conclusion that the herein transaction was an "F" reorganization.

We follow this same course here.

## CONCLUSION

The factual findings of the district court are based upon correct principles of law and are not erroneous. The decision of that court that the reorganization was entitled to tax classification under § 368(a) (1) (F) of the Internal Revenue Code of 1954 is affirmed and the cause is remanded with directions to hold such further proceedings as that court may deem necessary to determine what loss carry-back tax credits the taxpayer can establish in accordance with this opinion.

Affirmed and remanded.