345 F.Supp. 610 (1972)
UNITED STATES of America, Plaintiff,
v.
AMERICAN INSTITUTE OF MARKETING SYSTEMS, INC., Defendant.
No. 71 C 772(A).
United States District Court, E. D. Missouri, E. D.
July 7, 1972.
Daniel Bartlett, Jr., U. S. Atty., David W. Harlan, Asst. U. S. Atty., for plaintiff.
Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
Plaintiff, United States of America, brought this action under 26 U.S.C. § 7405(b) to recover refunds of federal income taxes allegedly erroneously issued to defendant, American Institute of Marketing Systems (hereinafter referred to as "New" AIMS), in the amount of $55,239.11, plus interest thereon as provided under 26 U.S.C. § 6602. This Court has jurisdiction under 28 U.S.C. §§ 1340 and 1345 and 26 U.S. C. § 7402. "New" AIMS's answer to plaintiff's complaint denied none of the allegations contained in the complaint. It admitted the majority of the allegations and stated that it was without knowledge or information sufficient to form a belief as to the remaining allegations. Plaintiff filed a motion for summary judgment supported by various documents and exhibits. No response was filed by "New" AIMS. As a result, the uncontroverted facts presented by plaintiff will be taken as true.
On December 1, 1960, a corporation known as American Institute of Marketing Systems, Inc. (hereinafter referred to as "Old" AIMS) was incorporated pursuant to the laws of the State of Missouri. This corporation continued in existence for several years and for the fiscal years ended September 30, 1967, and August 31, 1968, filed federal corporate income tax returns.
On July 19, 1968, "Old" AIMS, together with a corporation known as Relocation Finance Corporation (hereinafter referred to as RFC), entered into an agreement and plan of reorganization with International Industries, Inc. (hereinafter referred to as III), whereby "Old" AIMS and RFC were to transfer all of their assets to III in exchange for shares of stock of III.
On September 24, 1968, "Old" AIMS, as required by the agreement with III, changed its name to Profit Mate, Inc. This change of name was certified and filed by the Secretary of State of the State of Missouri.
*611 Also on September 24, 1968, a corporation known as A.I.M.S. International Corporation was incorporated pursuant to the laws of the State of Missouri as a wholly owned subsidiary of III, and "New" AIMS was incorporated pursuant to the laws of the State of Missouri as a wholly owned subsidiary of A.I.M.S. International Corporation.
Profit Mate, Inc., as required by the agreement with III, filed Articles of Dissolution with the Secretary of State of the State of Missouri on December 30, 1968, and was issued a certificate of dissolution on March 17, 1969.
On November 28, 1969, "New" AIMS filed its tax return for the fiscal year ended August 31, 1969, and simultaneously filed an application for carryback of a net operating loss incurred during that fiscal year. The Internal Revenue Service allowed a part of the loss of "New" AIMS to be charged against the income of "Old" AIMS for the fiscal years ended September 30, 1967, and August 31, 1968.
On December 22, 1969, the Internal Revenue Service issued to defendant, "New" AIMS, two refund checks, No. 69687321 in the amount of $7,251.89, and No. 69687322 in the amount of $47,987.22.
Plaintiff has alleged that these refunds were erroneous in that "New" AIMS could not apply its net operating loss against the income of an entirely separate and distinct corporation, "Old" AIMS and, as a matter of law, was not entitled to the refund checks issued.
Section 172 of the Internal Revenue Code of 1954, 26 U.S.C. § 172, provides a deduction for net operating losses. Such a deduction, subject to the regulations and limitations set forth in Section 172, may be carried forward to offset future years' income or carried back to be applied against former years' income. As a general rule, however, the deduction for a net operating loss carryover or carryback is personal to the taxpayer who sustains the loss. The United States Supreme Court in New Colonial Ice Co. v. Helvering, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348, set forth this general rule, stating at 292 U.S. 440, 54 S.Ct. 790:
"* * * the statutes have disclosed a general purpose to confine allowable losses to the taxpayer sustaining them, i. e., to treat them as personal to him and not transferable to or useable by another."
The Eighth Circuit followed this decision in Interstate Transit Lines v. Commissioner, 130 F.2d 136, aff'd 319 U.S. 590, 63 S.Ct. 1279, 87 L.Ed. 1607.
The Internal Revenue Code of 1954 contains some exceptions to the general rule discussed above when a net operating loss carryover or carryback is related to corporate mergers, divisions, acquisitions and reorganizations. However, except in limited circumstances, net operating loss carrybacks are not allowed. Section 381(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 381(b) provides:

"Operating rules  Except in the case of an acquisition in connection with a reorganization described in subparagraph (F) of section 368(a) (1) 
* * * * * *
"(3) The corporation acquiring property in a distribution or transfer described in subsection (a) shall not be entitled to carry back a net operating loss or a net capital loss for a taxable year ending after the date of distribution or transfer to a taxable year of the distributor or transferor corporation."
Therefore, if "New" AIMS acquired property in a distribution or transfer described in subsection (a) of section 381, it would not be allowed to carry back its net operating loss unless there was a reorganization of the type described by section 368(a) (1) (F). That section of the Code defines an "F" reorganization as "a mere change in identity, form, or place of organization, however effected."
*612 In Helvering v. Southwest Consol. Corp., 315 U.S. 194, 202-203, 62 S.Ct. 546, 552, 86 L.Ed. 789 (1942), the Supreme Court discussing the predecessor to Section 368(a) (1) (F), held:
"* * * a transaction which shifts the ownership of the proprietary interest in a corporation is hardly `a mere change in identity, form, or place of organization' * * *."
Cases decided under the 1954 Code reiterate the Supreme Court's holding. Davant v. Commissioner, 366 F.2d 874 (5th Cir. 1966), cert. denied 386 U.S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460 (1967); Estate of Stauffer v. Commissioner, 403 F.2d 611 (9th Cir. 1968). The Fifth Circuit, in Home Construction of America v. United States, 439 F.2d 1165, 1170 (1971), recently listed the standards established by Davant, supra, for determining whether a reorganization falls within section 368(a) (1) (F), stating:
"In summary, we hold that Davant establishes criteria which adequately define when a reorganization qualifies as a mere change in form, identity, or place of incorporation. These include identity of shareholders and their proprietary interests, unimpaired continuity of the essential business enterprise and a new form which is the alter ego of the old."
In the present case, the identity of shareholders and their proprietary interests before and after the reorganization is not the same. As evidenced by the plan of reorganization between III, RFC, and "Old" AIMS (Ex. A), which has been adhered to, as evidenced by the fact that "Old" AIMS changed its corporate name (Ex. B) and later dissolved (Ex. D) as consideration for the reorganization agreement (Ex. A, Art. 4.8), "Old" Aims and RFC received 30,000 shares of stock of III in exchange for the transfer of the assets of those two organizations. The plan of reorganization states that the issued and outstanding stock of III amounted to 2,088,811 shares. "New" AIMS is a subsidiary of a subsidiary of III. Therefore, whereas the shareholders of "Old" AIMS owned a hundred percent interest in that corporation, their share of "New" AIMS amounts to less than two percent. As a result, there was no "F" reorganization.
If "New" AIMS does not come under section 381(a) it is not entitled to carry back a net operating loss under the rule set forth in New Colonial Ice Co. v. Helvering, supra. If it does come under section 381(a) it is not entitled to carry back a net operating loss because of section 381(b)(3). "New" AIMS was not legally entitled to carry back its net operating loss to the tax years of "Old" AIMS and the refunds issued to "New" AIMS based upon the application for net operating loss carrybacks were erroneous.
Accordingly, plaintiff's motion for summary judgment will be granted and the clerk of the court is directed to prepare and enter a judgment in favor of plaintiff for $63,667.53 (being $55,239.11, plus interest at six percent per annum from December 22, 1969, to July 7, 1972, or $8,428.42), with interest from date and costs.