**PERFORMANCE SYSTEMS, INC.,** Successor to Minnie Pearl's Chicken System, Inc., Plaintiff,

v.

**UNITED STATES of America,** Defendant.

Civ. A. No. 6758.

United States District Court, M. D. Tennessee, Nashville Division.

Aug. 30, 1973.

John L. Chambers, James David Leckrone, Nashville, Tenn., for plaintiff.

Charles H. Anderson, U. S. Atty., Martha Johnson, Asst. U. S. Atty., Nashville, Tenn., for defendant.

## MEMORANDUM

MORTON, District Judge.

This is an action for the recovery of federal corporate income taxes for the year 1967 in the total amount of $171,572.00. Jurisdiction is founded upon the provisions of 28 U.S.C. § 1346(a)(1).

The parties having stipulated all pertinent facts, the plaintiff moved for summary judgment. The defendant government opposed that motion and cross-moved for summary judgment. The Court finds from the stipulation of facts and the statements of the parties in their respective motions for summary judgment that the sole issue remaining for determination is whether the merger of a wholly-owned subsidiary corporation, Minnie Pearl's Chicken System, Inc., into its parent, then known as Hooker Enterprises, Inc., constituted a reorganization as described in Section 368(a)(1)(F) of the Internal Revenue Code of 1954, so that subsequent losses of the parent attributable to the business of its former subsidiary could be carried back to a separate taxable period of the subsidiary.

The plaintiff, Performance Systems, Inc., is a Tennessee corporation with its principal place of business in Nashville, Tennessee. The plaintiff is the successor corporation to Minnie Pearl's Chicken System, Inc. and is referred to as the parent corporation. Minnie Pearl's Chicken System, Inc. was incorporated on July 11, 1967, as a wholly-owned subsidiary of the parent corporation, and on January 22, 1968, was merged into the parent. Minnie Pearl's Chicken System, Inc. is referred to as the subsidiary corporation. The corporate name of the parent corporation at that time was Hooker Enterprises, Inc., which was subsequently changed to Minnie Pearl's Chicken System, Inc., which was subsequently changed to Performance Systems, Inc.

For the year ending December 31, 1967, the subsidiary corporation timely filed an income tax return reflecting taxes due in the amount of $169,630.00, which were paid by the subsidiary corporation. Additional taxes in the amount of $7,521.28 were assessed against and paid by the subsidiary after examination. The subsidiary also filed a federal corporation income tax return for the short period beginning January 1, 1968, and ending January 22, 1968, which reported a net operating loss. Based upon a carryback of that net operating loss to the period ended December 31, 1967, the Internal Revenue Service refunded to the subsidiary $5,579.00. As a result of the above transactions, the subsidiary has paid a net amount of $171,572.00 in income taxes for the year ended December 31, 1967.

For the year ended December 28, 1969, the parent filed a consolidated income tax return reporting a net operating loss of $8,367,168.00. The plaintiff timely filed a claim for refund seeking recovery of the income taxes paid by the subsidiary for the year ended December 31, 1967. The refund claim is based upon a carryback of the parent corporation's net operating loss for its year ended December 28, 1969, to the subsidiary's year ended December 31, 1967. The foregoing claim for refund was not allowed by the Internal Revenue Service, and the plaintiff formally waived notice of disallowance of that claim and timely commenced this action.

Section 381(b) of the Internal Revenue Code permits carryback of a net operating loss in this situation only if the merger of the subsidiary into the parent qualifies as a reorganization defined in Section 368(a)(1)(F) of the Internal Revenue Code. The sole question presented is whether the merger on January 22, 1968, qualifies as such a reorganization.

The parties have stipulated all of the relevant facts in this case, and the stipu-

lations of fact together with accompanying exhibits are incorporated herein by reference. The original pretrial order in this case set forth a single issue of fact remaining for decision, namely, whether the business activity which produced the income of the subsidiary in 1967 also incurred the loss in 1969. Subsequently, the parties jointly applied for, and were granted, an amended pretrial order which rescinded the previous order and provided that the parties would submit a stipulation of all material facts and issues in this case accompanied by motions for summary judgment and briefs in support thereof. The statements of both parties in their respective motions filed in response to the amended pretrial order to the effect that the *sole* issue remaining is whether the stipulated merger constituted a reorganization described in Section 368(a)(1)(F), thereby permitting a carryback of losses pursuant to Section 381(b), precludes any factual issue of continuity of business, identity of ownership, business purpose, or otherwise. The Court finds from the pleadings and stipulations that all issues of fact of such nature have been admitted by the defendant in favor of the plaintiff, the defendant relying solely upon the determination of the Court as to the interrelationship of Section 368(a)(1)(F), 332, and 381 of the Internal Revenue Code. The Court is not unmindful of the fact that by eliminating all other issues, the parties have presented the Court with a determinative issue of law considered by the Commissioner of Internal Revenue to be of "prime importance," unsullied by peripheral issues. With this in mind, some discussion of the factual background of this case is in order.

Prior to the merger of January 22, 1968, Minnie Pearl's Chicken System, Inc. was a wholly-owned subsidiary of the then parent corporation, Hooker Enterprises, Inc. (now the plaintiff corporation, Performance Systems, Inc.). Both the parent corporation and the subsidiary engaged in the business of selling and development of franchises for fast-food retail outlets selling specially-prepared fried chicken and certain complementary food items.

On January 22, 1968, the subsidiary corporation was merged into the parent corporation, Hooker Enterprises, Inc., apparently for good business reasons. The merger qualified as a statutory merger under the laws of the State of Tennessee. The parent corporation, Hooker Enterprises, Inc., immediately changed its name to Minnie Pearl's Chicken System, Inc. Thereafter in February 1969, the parent corporation again changed its name to Performance Systems, Inc., still the parent corporation, and the plaintiff herein. On January 22, 1968, the parent corporation owned all of the stock of the Minnie-Pearl subsidiary corporation. The stock ownership of the parent corporation both before and after the merger was identical. The overall business described above was continued after the merger; the surviving parent corporation continued to perform both the business which had been previously carried on by the parent corporation and also that business which had been previously carried on by the subsidiary. There was no change in the form or location of corporate assets, no change in the personnel or management, and no change in the type or method of business operations as a result of or after the merger. Officers and directors of the parent corporation and the subsidiary were identical before and after the merger.

The primary activity of the parent corporation and the subsidiary since their inception was the development of a nationwide system of retail outlets selling specially-prepared fried chicken and complementary food items and the sale and development of franchises and franchise outlets. There were no changes in the manner or purpose in and for which this business was carried on prior and subsequent to the merger.

The plaintiff, Performance Systems, Inc., is the parent of an affiliated group of subsidiary corporations which filed a consolidated income tax return for the

year ended December 28, 1969, reporting a net operating loss of $8,367,168.00. The parties have stipulated that the parent corporation's share of the consolidated net operating loss for the year ended December 28, 1969, as computed in accordance with Treasury Regulations § 1.-1502–79(a)(3), is sufficient that, if it may properly be carried back and applied against the income of the subsidiary corporation for its initial period ended December 31, 1967, all taxes paid by the subsidiary corporation for that initial period would be refundable. It is also stipulated that at least so much of that loss as would result in that refund was incurred by the parent corporation in connection with that separate business activity which had formerly been carried on by the subsidiary prior to the merger on January 22, 1968.

The general statutory basis for the carryback of net operating losses is found in Section 172 of the Internal Revenue Code, which allows a taxpayer to carry back a net operating loss deduction to each of the three taxable years preceding the year of the loss. However, the effect of a corporate reorganization on the availability of carrybacks and carryforwards of net operating losses is governed by Section 381 of the Internal Revenue Code, which permits a corporation that acquires the assets of another corporation through liquidation of a subsidiary or certain types of corporate reorganizations to succeed to the tax benefits of the acquired corporation. That section, of course, contains certain restrictions on the availability of net operating losses and provides that, *except in the case of an "F" reorganization,* net operating losses incurred subsequent to the acquisition may not be carried back to taxable years of the acquired corporation prior to the acquisition or reorganization.

The issue in this case is whether or not, under the facts stipulated by the parties, the merger of the subsidiary into the parent on January 22, 1968, qualifies as an "F" reorganization under Section 368 of the Internal Revenue Code. If such merger qualifies as an "F" reorganization, it is very clear that Section 381 allows carryback of the net operating loss sustained by the parent for the year ended 12/28/69 to be carried back to the subsidiary's taxable year ended 12/31/67. If this loss may be carried back to the subsidiary's year ended 12/31/67, there is a sufficient amount of loss available to result in a total refund of the federal income taxes paid by the subsidiary for the year ended 12/31/67.

Section 368(a)(1)(F) of the Internal Revenue Code defines the type of reorganization commonly referred to as an "F" reorganization as:

A mere change in identity, form, or place of organization, however effected.

The Treasury Regulations contain no provisions as to what constitutes an "F" reorganization, and this type of reorganization has in the past received very little attention. Interpretations of this provision by the courts first began to appear as a result of the Commissioner of Internal Revenue using the "F" reorganization provisions to combat what is commonly known as liquidation-reincorporation of business enterprises. Since then, the courts have had an opportunity to interpret this section in factual settings almost identical to the plaintiff's. The first case in this area, Davant v. Commissioner, 366 F.2d 874 (1966), cert. denied 386 U.S. 1022, 87 S.Ct. 1370, 18 L.Ed.2d 460 (5th Cir. 1966), was decided by the Fifth Circuit Court of Appeals in 1966. The Court stated:

The term 'mere change in identity [or] form' obviously refers to the situation which represents a mere change in form as opposed to a change in substance. Whatever the outer limits of section 368(a)(1)(F), it can clearly be applied where the corporate enterprise continues uninterrupted, except for a distribution of some liquid assets or cash. Under such circumstances, there is a change of corporate vehicles but not a change in substance

. . . At least where there is a complete identity of shareholders and their proprietary interests, as here, we hold that the type of transaction involved is a type (F) reorganization.

It is very clear that the *Davant* case and the subsequent cases hold that the primary criteria for determining whether an "F" reorganization has occurred is a continuity of proprietary interests and a continuity of the business enterprise. There must be no change whatsoever in the proprietary interests and the business must continue uninterrupted.

In addition to the *Davant* case, the following cases have followed the sound reasoning of the *Davant* case: Estate of Stauffer v. Commissioner, 403 F.2d 611 (9th Cir. 1968); Associated Machine v. Commissioner, 403 F.2d 622 (9th Cir. 1968); and Home Construction Corporation of America v. United States, 439 F.2d 1165 (5th Cir. 1971). In the most recent of the above cases, *Home Construction Corporation,* the United States Court of Appeals for the Fifth Circuit stated:

> In summary, we hold that *Davant* establishes criteria which adequately define when a reorganization qualifies as a mere change in form, identity, or place of incorporation. These include identity of shareholders and their proprietary interests, unimpaired continuity of the essential business enterprise, and a new form which is the alter ego of the old. *Home Construction Corporation, supra,* 1170.

After a thorough review of the position taken by the Fifth and Ninth Circuits, this Court is of the opinion that it is the correct position and one which will be followed by this Court. The legislative history and common sense support the view that the true test of an "F" reorganization is continuity of matters of substance.

The Commissioner of Internal Revenue continues to take the position he has taken in previous cases involving the same issue as this case, that position being that irrespective of continuity of proprietary interests and continuity of business enterprise, an "F" reorganization can apply only to changes in the structure of one corporation and cannot apply to a reorganization involving two or more active corporations. Essentially, the Commissioner's position is that "F" reorganizations should be restricted to the reincorporation of a single operating corporation and that if this narrow rule is not adopted, then the scope of "F" reorganizations would be so enlarged that a displacement of or malfunctioning of other provisions or portions of the Code's reorganization machinery would result and thereby raise other unworkable problems in harmonizing certain accounting factors in reorganizations. This Court is of the opinion that under the *Davant, Stauffer, Associated Machine,* and *Home Construction Corporation* cases, the law is well settled and the reasoning of those cases is completely sound. To emphasize the importance of these cases, a brief review of each follows:

*The Davant Case.* The *Davant* case did not involve a net operating loss, but the effort by the stockholders who owned two operating corporations to get the operating assets of one corporation into the other without incurring any ordinary income tax on the transfer of the liquid assets to certain of the stockholders. In essence, there was a "sale" of the stock of one corporation [Warehouse] to a straw man, who liquidated it, "sold" the operating assets to the other corporation [Water], and used the proceeds to pay the "loan" which he had initially contracted to obtain the funds to buy the stock. The Fifth Circuit held that in substance these transactions constituted a "D" reorganization *and* an "F" reorganization. The following language from the Court's opinion is highly pertinent in the present case:

> *The term 'mere change in identity [or] form' obviously refers to a situation which represents a mere change in form as opposed to a change in substance. Whatever the outer limits of section 368(a)(1)(F), it can clearly*

be applied where the corporate enterprise continues uninterrupted, except for a distribution of some liquid assets or cash. Under such circumstances, *there is a change of corporate vehicles but not a change in substance.* If Water had no assets of its own prior to the transfer of Warehouse's operating assets to it, could we say that Water was any more than the alter ego of Warehouse? The answer is no. The fact that Water already had other assets that were vertically integrated with Warehouse's assets does not change the fact that *Water was Warehouse's alter ego. Viewed in this way, it can make no practical difference whether the operating assets were held by Water or Warehouse, and a shift between them is a mere change in identity or form.* At least where there is a complete identity of shareholders and their proprietary interests, as here, we hold that the type of transaction involved *is a type (F) reorganization.* (Emphasis added.) *Davant, supra,* 366 F.2d 884.

*The Stauffer Case.* The facts in *Stauffer* were quite like the facts in the present case except that the pre-merger corporations were not functionally integrated parts of one enterprise as they were here. Three separate operating corporations with the same owner (Stauffer California, Stauffer Illinois, and Stauffer New York) were consolidated into a newly-formed corporation (Stauffer New Mexico). The initial plan had been to relocate the assets of all three corporations in New Mexico, but this was never done. The three corporations had each reported its income on a fiscal year ending January 31, and the new corporation adopted that same year. The continuing corporation experienced heavy losses for its year ending January 31, 1961, and carried them back as a net operating loss to the two years of "Stauffer California" ending in 1958 and 1959. The following language fairly reflects the conclusions of the Ninth Circuit:

We do not see how the definitive principles of an 'F' reorganization can change from one case to another, from one context to another, dependent upon which position the Commissioner of Internal Revenue prefers. While the factual situation which gives rise to a determination in a given case will invariably differ, the standards by which the determination is to be made cannot. An 'F' reorganization is just that, and tax consequences flow from that determination, not vice versa.

Nor are we persuaded that a different result should have been obtained in *Davant* because of the 'legislative evidence' which was not presented to that court but which is before us. *The principle we derive from Davant is that a shift in operating assets from the transferor corporation to its alter ego wherein the identity of the proprietary interest remains intact and the business enterprise of the transferor corporation continues unimpaired results in an 'F' reorganization. There is a change of corporate vehicles but not a change in the substance of the transferor corporation.* In *Davant* the change was reflected by the disappearance of the Warehouse stock; the substance of the two pre-merger corporations did not change; the assets of Warehouse were merely reflected in the books of Water and in the increment in the Water stock. *In the instant case, the only change that took place was that Stauffer New Mexico reported the combined income of the three pre-merger corporations in one tax return;* the individual books of the constituent enterprises were kept as they had been before the merger; the enterprises continued to operate in the same manner and at the same locations as before the merger; the change was one of corporate vehicles only. The Regulations, § 1.381(b)–1(a)(2), state that in an 'F' reorganization the acquiring corporation is to be treated 'just as the transferor corporation would have been

treated if there had been no reorganization.' *Thus, the identity of pre-and post-merger entities is so complete that for tax purposes the latter is the former. That Stauffer New Mexico stood in the shoes of each of the three constituent corporations cannot be here denied; it was the alter ego of each of the three pre-merger entities.* (Emphasis added.) *Stauffer, supra,* 403 F.2d 619.

*Associated Machine.* In this Ninth Circuit case, one operating corporation was merged into another operating corporation and a post-merger net operating loss was carried back to a pre-merger year of the corporation which lost its corporate identity in the merger. The Ninth Circuit stated, "Finding no obstacle in either case law or logic, we decline to by-pass Davant v. Commissioner of Internal Revenue, *supra,* and hold that the reorganization of J & M through merger with Associated Machine Shop to have been a § 368(a)(1)(F) merger." It also stated:

. . . It is the Commissioner's position that 'F' reorganizations are limited to 'mere formalistic changes in the charter or place of [incorporation] of a single corporate enterprise.' In our judgment, the Commissioner's conception of the 'F' reorganization is overly narrow. *No logical distinction exists between a 'shell receiver' and an 'active receiver' when two factors co-exist: one, when the proprietary interest in the transferor and transferee is identical; and two, when the business is not interrupted.*

This conclusion is consistent with tax court decisions in the area of reorganization-liquidation, apparently the only decisions dealing with the characteristics of the 'F' reorganization. These cases identify the salient trait of an 'F' reorganization as being an identity of proprietary interest in the transferee and transferor corporations. Berghash v. Commissioner, 43 T.C. 743, 752–754 (1965), aff'd 361 F. 2d 257 (2d Cir. 1966); Gallagher v. Commissioner, 39 T.C. 144, 162 (1962), appeals dismissed Nos. 18844, 18845 (9th Cir. Sept. 19, 1963); Estate of James F. Suter v. Commissioner, 29 T.C. 244, 258 (1957). See Lane, "The Reincorporation Game: Have the Ground Rules Really Changed?" 77 Harv.L.Rev. 1218, 1247 (1964). *In focusing on the indicia which we judge indicate whether or not a 'mere change in identity' has occurred, we seek to avoid the mechanical approach advocated by the Commissioner which would frustrate what we believe is the function of § 368(a)(1)(F): a tax free reorganization involving corporate form but not substance.* (Emphasis added.) *Associated Machine, supra,* 403 F.2d 624.

*Home Construction Corporation.* This case involved the merger of 123 separate corporations involved in the shell home construction business into one single legal entity. Following the merger, the newly formed corporation incurred net operating losses which it sought to carry back against previous years of the predecessor corporations. There was no change whatsoever in the scope or type of overall business operations which were carried on by the business enterprise before or after the merger of the corporations into a single entity. The Fifth Circuit followed its earlier decision in the *Davant* case stating that:

In summary, we hold that *Davant* establishes criteria which adequately define when a reorganization qualifies as a mere change in form, identity, or place of incorporation. These include identity of shareholders and their proprietary interests, unimpaired continuity of the essential business enterprise and a new form which is the alter ego of the old. *Home Construction Corporation, supra,* 439 F.2d 1170.

In answer to the proposition that a change which alters the number of tax entities cannot qualify as an "F" reorganization, the Court stated:

The government suggests that a change which altered the number of

tax entities can never produce a subchapter F reorganization because this would vary the tax effect and any reorganization which results in any changed tax consequences cannot be a mere change in form; hence, the alteration of tax results alone would characterize the change as one of substance. We reject this reasoning. Certainly if there is a logos in the law, it is embodied in the rule that substance controls over form in determining tax consequences. But to reason that tax effects can, in and of themselves, breathe the life of substance into a carcass that otherwise is a mere change of form, is faulty reasoning. Tax results cannot form even a partial measure of determining what substance is present in a transaction. Our adoption of the government's position would literally let the tail wag the dog. *Home Construction Corporation, supra,* 1170.

The basic question in each of these cases was whether or not two active corporations could be combined in an "F" reorganization. In each of these cases, the sound conclusion was reached that the questions should be answered in the affirmative. There is no logical reason for this Court to find differently. The words of the statute, "a mere change in identity, form, or place of organization, however effected," mean exactly what they say, and a change in form which involves no change in substance should be classified as an "F" reorganization.

 Applying the tests set out above to the facts in this case, the Court holds that the merger of the subsidiary into the parent on January 22, 1968, qualified as a "F" reorganization. There was absolutely no change in the proprietary interests or the business enterprise carried on by the parent and the subsidiary as a result of the merger on January 22, 1968. The stock ownership of the parent corporation both before and after the merger was identical. Since the parent owned all of the outstanding stock of the subsidiary, there is no doubt that the stockholders owning the business carried on by the parent and subsidiary prior to the merger were the same stockholders which owned the combined business carried on by the parent subsequent to the merger.

There is equally no doubt that the continuity of the business enterprise requirement has been met. As was stipulated by the parties, the business carried on by the parent and the subsidiary continued uninterrupted by the legal changes in the corporate structure caused by the merger on January 22, 1968. Both the parent and subsidiary were, prior to the merger, engaged in the business of selling and development of franchises for fast-food retail outlets selling specially-prepared fried chicken and complementary food items. This overall business was continued after the merger; the surviving parent corporation continued to perform both the business which had been previously carried on by the parent corporation and also that business which had been previously carried on by the subsidiary Minnie Pearl corporation. There was no change in the form or location of corporate assets, no change in the personnel or management, and no change in the type or method of business operations as a result of or after the merger. Officers and directors of the parent and subsidiary were identical both before and after the merger and there were no changes in the manner or purpose in and for which this business was carried on prior and subsequent to the merger.

The Court finds that the merger of January 22, 1968, made no substantive changes in the business enterprise. The only change was the change in the form of conducting the business, which only involved a change of corporate vehicles. There was no change in the substance of the business enterprise.

However, the finding that the merger qualified as an "F" reorganization is not necessarily decisive in this case. The *Stauffer, Associated Machine,* and *Home Construction Corporation* cases involved the merger of what is commonly referred to as brother/sister corporations,

a term which refers to two or more corporations which are identically owned by the same individuals. Instead of a brother/sister relationship, the plaintiff's case involves a parent/subsidiary relationship.

A merger of a wholly-owned subsidiary into the parent also qualifies as a liquidation of a subsidiary under Section 332 of the Internal Revenue Code. Under this set of circumstances, we have a situation where the statutory merger of the subsidiary into the plaintiff on January 22, 1968, qualified as:

1. A mere change in identity, form, or place of organization, however effected, qualifying as a reorganization defined in Section 368(a)(1)(F) of the Internal Revenue Code.

2. A statutory merger of two corporations qualifying as a reorganization under Section 368(a)(1)(A) of the Internal Revenue Code.

3. A liquidation of a subsidiary qualifying as a liquidation under Section 332 of the Internal Revenue Code.

The obvious question which must be answered is—Are these sections mutually exclusive? The answer is no. Treasury Regulations § 1.381(b)-1(a)(2) expressly recognizes that a transaction may qualify under several of the reorganization provisions. That Regulation states:

In the case of a reorganization qualifying under Section 368(a)(1)(F) *(whether or not such reorganization also qualifies under any other provision of Section 368(a)(1))* the acquiring corporation shall be treated (for purposes of Section 381) just as the transferor corporation would have been treated if there had been no reorganization . . . (Emphasis added.)

Thus, as the District Court in the *Home Construction Corporation* case stated:

Even though the merger here is a 'statutory merger' type of reorganization within the meaning of Section 368(a)(1)(A), if it is likewise an "F" type reorganization within the mean-

ing of Section 368(a)(1)(F), the latter will control. Home Construction Corporation of America v. United States, 311 F.Supp. 830 (D.C.Alabama 1970).

The issue, therefore, is whether or not a transaction which qualifies both as a liquidation of a subsidiary and as an "F" reorganization is precluded from the tax benefits available to it as an "F" reorganization merely because it also qualifies as a liquidation.

In order to put this question in proper perspective, it is first necessary to take an overall view of the portion of the Internal Revenue Code with which we are dealing. Each of the sections involved in this case are found in Subchapter C of Chapter 1 of the Internal Revenue Code. Subchapter C deals with corporate distributions and adjustments and their effect on income tax liability. The various parts of Subchapter C deal with distributions by corporations, corporate liquidations, corporate organizations and reorganizations, insolvency reorganizations and carryovers respectively. Nowhere in the language of Subchapter C is there any requirement that a given transaction cannot be covered by more than one part or that any part is mutually exclusive of the others. As a practical matter, there is no reason why they should be exclusive. Each of the parts deals with one subject—the taxability of corporate distributions. The two provisions in question do exactly the same thing—they define transactions in which the distribution will be tax free. Why should two such provisions be mutually exclusive? This Court can find no reason why they should be. There is no logical reason why a transaction qualifying as an "F" reorganization should be denied the tax benefits expressly conferred upon it by Section 381(b) merely because it also qualifies as a liquidation.

This reasoning does not create a conflict between the sections and is in harmony with the intent of Section 381. The legislative draftsmen chose to except "F" reorganizations from the prohibition of carrybacks provided in Section 381(b). They did not choose to except

liquidations under Section 332. They obviously felt that carryback of losses should be allowed in situations qualifying as "F" reorganizations. If they had intended that not all transactions which meet the requirements of an "F" reorganization be entitled to this relief, they would have so specified. It is understandable that they did not choose to grant the same relief to all liquidations qualifying under Section 332. Section 332 covers a much broader area and there is no strict requirement for a continuity of proprietary interest or business enterprise as there is for an "F" reorganization. However, if a liquidation does meet these strict requirements and qualifies as an "F" reorganization, there is no reason why it should not be entitled to the relief afforded other "F" reorganizations. If instead of liquidating the subsidiary, a parent merged into the subsidiary in a merger qualifying as an "F" reorganization, there would be no doubt that the carryback provision of Section 381(b) would be applicable. What difference should there be if a parent merges into subsidiary or subsidiary is merged into parent? The resulting business enterprise, proprietary interests, and identity of shareholders is the same. Therefore, there is merely a change in form, but not substance, and the tax consequence should be the same regardless of the direction of the transaction.

The only case which the defendant has cited in its argument that the liquidation provision should prevail is Kansas Sand & Concrete, Inc. v. Commissioner, 462 F.2d 805 (10 Cir. 1972). That case dealt with a purchase followed by a merger in a plan to acquire the subsidiary's assets in conformance with Section 334(b)(2). Since there was no continuity of proprietary interests, reorganization treatment was inappropriate when the parent's ownership of the subsidiary was purchased as a step in a plan to acquire the subsidiary's assets. The case bears no weight on whether Section 332 and the "F" reorganization provisions are mutually exclusive, as the transaction in that case could not have qualified as an "F" reorganization.

■ This Court holds that the reorganization and liquidation provisions of Subchapter C of the Internal Revenue Code are not mutually exclusive, and a transaction qualifying as an "F" reorganization is not precluded from the benefits conferred upon "F" reorganizations under Section 381(b) of the Internal Revenue Code merely because the transaction also qualifies under Section 332 of the Internal Revenue Code. Aside from the technical aspects of the Code provisions, this decision is in accord with the intent of Section 381. The basic concept of allowing net operating loss carrybacks and carryforwards is a recognition by Congress that business does not operate on a strict yearly basis but is a continuing operation. While businesses have operating cycles, these operating cycles do not conform to the calendar, and Congress recognized that while businesses should pay income taxes on their profits, they should pay only on the overall profit of the business operations. A review of the tax returns for the plaintiff which are attached as exhibits to the Stipulation of the parties leaves no doubt that the overall result of the operations of the business enterprise carried on by the plaintiff resulted in an enormous loss. In its report on Section 381, the Senate Committee stated:

Your Committee agrees that whether or not the items carryover should be based upon economic realities rather than upon such artificialities as the legal form of the reorganization. S. Rep. No. 1622, 83rd Cong. 2nd Sess., 3 U.S.Code Cong. & Admin.News, p. 4683 (1954).

■ The plaintiff sees no reason why a parent/subsidiary in this situation should be treated any differently than a brother/sister corporation. Treating brother/sister corporations differently than parent/subsidiary corporations would obviously create a situation where the artificialities of the legal form of organization rather than the economic

substance would determine tax conse-quences.

In summary, this Court holds that the merger of the parent and subsidiary was a reorganization as defined in Section 368(a)(1)(F) of the Internal Revenue Code, that the plaintiff is therefore entitled to carry back its net operating loss as permitted by Section 381(b) of the Internal Revenue Code, and that this result is not precluded by the fact that the "F" merger also fell within the definition of a liquidation under Section 332 of the Code.

The Court holds that the plaintiff is entitled to a refund of the federal income taxes paid by the subsidiary in the amount of $171,572.00 for the year ended December 31, 1967, based upon a carryback of the net operating loss sustained for the year ended December 28, 1969. Plaintiff's motion for summary judgment in its favor is hereby granted; defendant's cross-motion is denied; and it is ordered and adjudged that such judgment shall be entered in the amount of $171,752.00 with interest thereon as provided by law.